**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| SUZANNE IOERGER, | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | No.  14-1179-MLB |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

<u>**MEMORANDUM AND ORDER**</u>

This is an action reviewing the final decision of the Commissioner of Social Security denying plaintiff supplemental security income payments.  The matter has been fully briefed by the parties and the court is prepared to rule.  (Docs. 14, 19, 22).

**I. General Legal Standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is

overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not

working at a "substantial gainful activity."  At step two, the agency
will find non-disability unless the claimant shows that he or she has
a "severe impairment," which is defined as any "impairment or
combination of impairments which significantly limits [the claimant's]
physical or mental ability to do basic work activities."  At step
three, the agency determines whether the impairment which enabled the
claimant to survive step two is on the list of impairments presumed
severe enough to render one disabled.  If the claimant's impairment
does not meet or equal a listed impairment, the inquiry proceeds to
step four, at which the agency assesses whether the claimant can do
his or her previous work; unless the claimant shows that he or she
cannot perform their previous work, they are determined not to be
disabled.  If the claimant survives step four, the fifth and final
step requires the agency to consider vocational factors (the
claimant's age, education, and past work experience) and to determine
whether the claimant is capable of performing other jobs existing in
significant numbers in the national economy.  Barnhart v. Thomas, 124
S. Ct. 376, 379-380 (2003).

    The claimant bears the burden of proof through step four of the
analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993).  At step
five, the burden shifts to the Commissioner to show that the claimant
can perform other work that exists in the national economy.  Nielson,
992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir.
1993).  The Commissioner meets this burden if the decision is
supported by substantial evidence.  Thompson, 987 F.2d at 1487.
Before going from step three to step four, the agency will assess the
claimant's residual functional capacity (RFC).  This RFC assessment

is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); 404.1520(f, g).

## II.  History of Case

On September 26, 2012, administrative law judge (ALJ) John Langland issued his decision.  (R. at 8-25).  Plaintiff alleged that her disability began April 13, 2006.  (R. at 23).  At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since her application date (R. at 25).  At step two, the ALJ found that plaintiff had the following severe impairments: depressive disorder, post-traumatic stress disorder, panic disorder with agoraphobia and borderline personality disorder (R. at 25).  At step three, the ALJ found that plaintiff's impairments did not meet or equal a listed impairment (R. at 25-26).  After establishing plaintiff's RFC, the ALJ found at step four that plaintiff could not perform past relevant work.  (R. at 27-32).  At step five, the ALJ determined that plaintiff could perform work that existed in significant numbers in the economy and therefore concluded that plaintiff was not disabled at any time.  (R. at 32-33).

## III. Analysis

### A.   Dr. Allen[1]

Plaintiff contends that the ALJ erred in his interpretation of Dr. Allen's opinion and asserts that the opinion supports a finding

---

[1] Plaintiff also makes unsubstantiated claims of bias on the part of the ALJ, especially with respect to his interpretation of Dr. Allen's opinion. (Doc. 14 at 3, 37, 40, 41, 42, 57.) The record shows that plaintiff received a full and fair hearing before the ALJ.  The only basis for the claim of bias, as far as the court can tell, is that the ALJ ruled against plaintiff. Cf. Liteky v. United States, 510 U.S. 540, 555 (1994) (judicial rulings alone almost never constitute a valid basis for a bias or partiality motion).

of disability at Step III.  Dr. Allen, a psychologist, completed both a medical source statement of ability to do work-related activities and a written report.  Her medical source statement states that plaintiff has mild limitations in her ability to understand and carry out simple instructions, ability to make judgments on simple and complex work-related decisions, and to understand and carry out complex instructions.  (R. at 439).  Dr. Allen also determined that plaintiff has moderate limitations with respect to her ability to interact appropriately with the public, her supervisor and co-workers. (R. at 440).  Dr. Allen's written report concludes as follows:

> In her current state, Ms. Ioerger would find it quite difficult to manage ost of the details and working environment.  Although she could usually manage finances and understand, carry out, and remember simple instructions; she would often be excessively focused on her worries and preoccupations.  This would affect her abilities in most areas, producing weakness in her abilities to: work at a reasonable pace, respond appropriately to supervision and coworkers, and handle expectable pressures in a work setting.

(R. at 445).

The ALJ discussed Dr. Allen's opinion as follows:

> For further evaluation, the claimant was referred for psychological examination on August 8, 2012 with Molly Allen, Psy.D., who diagnosed the claimant with generalized anxiety disorder, post-traumatic stress disorder; and borderline personality disorder(Exhibit 9F/8).  Although Dr. Allen noted that the claimant did make some rather dramatic claims, she indicated that the claimant was of average intelligence, was able to maintain eye contact, and earned 28 out of possible 30 points on a mini-mental state examination (indicating results in the fairly good range). While the claimant was noted to have a history of some poor choices, she showed no sign of any significant memory disturbance. In addition, the claimant showed no sign of any problems with immediate or intermediate recall, using visual spatial skills, and using language effectively, including following multi-stage commands. (Exhibit 9F/8).

> The evidence indicates that there is no physical

-5-

reason that the claimant would be unable to work at all exertional levels. Despite her psychological impairments, she retains the ability to perform simple, unskilled work involving routine, repetitive tasks within a low-stress environment where she would not be subject to customer service demands. However, taking into consideration her difficulty with social interaction, the residual functional capacity has been further reduced to allow only occasional interaction with supervisors and co-workers, and no interaction with the general public. Further, to accommodate the claimant's symptoms of reduced concentration, the undersigned finds that she can only perform simply, work-related decision-making and no complex planning or negotiation; and the she can tolerate only minor, infrequent changes within the workplace.

* * *

Following an August 2012 consultative examination, Molly Allen, Psy.D. opined that the claimant would have difficulties managing some aspects of a work environment. While Dr. Allen opined that the claimant could manage finances and understand, carry out, and remember simple instructions, she would also often be excessively focused on her worries and preoccupations. In addition, Dr. Allen opined that this would affect her abilities in most areas, producing weakness in her abilities to work at a reasonable pace, respond appropriately to supervision and co-workers, and handle expectable pressures in a work setting (Exhibit 9F/8P). This opinion is afforded substantial weight.

Although Dr. Allen opined that the claimant may have "weakness" in some areas, the undersigned notes that Dr. Allen did not state that the claimant experienced such difficulties to the extent that they would preclude performance of basic work activities as set out in Social Security Ruling 85-15. At the same time, the undersigned finds that Dr. Allen intended to convey an impression of limitation in these restrictions in the determination of the claimant's residual functional capacity that address these potential problems.

The undersigned agrees with Dr. Allen's assessment that the claimant would have some difficulties, in light of that, allows the claimant a limitation to no more than occasional interaction with supervisors and co-workers, no interaction with members of the public, or work involving customer services. Although such limitations may not be sufficient if the claimant were determined incapable of any social interaction, Dr. Allen found only that the claimant would have some "weakness" in these areas. In fact, Dr. Allen noted the presence of only "moderate" limitations on her Medical Source Statement. Moderate limitations are not

considered to be incompatible with the ability to perform simple work (Exhibit 9F/2-4). Thus the undersigned has afforded substantial limitations in the claimant, but declines to find that moderate limitations are preclusive of all competitive employment.

(R. 28, 31).

Plaintiff contends that Dr. Allen's summary contained in her written report supports a finding of disability. Plaintiff argues that the ALJ ignored the summary and should have re-contacted Dr. Allen in order to resolve the apparent ambiguity in her opinion. On March 26, 2012, six months prior to the ALJ's decision, the regulations were changed, giving adjudicators greater flexibility in obtaining information necessary to make a disability determination, and they no longer require that an ALJ first re-contact a treating source to resolve an inconsistency or insufficiency in the evidence that source provides to the Social Security Administration. How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651 (Feb. 23, 2012). Therefore, the ALJ was not required to re-contact Dr. Allen.

Nevertheless, the court is not persuaded that the ALJ erred in his analysis of Dr. Allen's opinion. The summary opinion, while listing plaintiff's limitations, does not conclude that plaintiff is prevented from gainful employment. It merely states that plaintiff would be focused on her worries which would affect her abilities in most areas. This opinion supports Dr. Allen's medical source statement which opines that plaintiff has moderate limitations in certain areas. Dr. Allen did not list any other limitations in her medical source statement which was written on the same day of her written report. Nor did Dr. Allen indicate that plaintiff's

-7-

limitations were marked, in order to support plaintiff's position that she meets a listing at step 3.

Therefore, the court finds that substantial evidence supports the ALJ's conclusion that Dr. Allen's opinion only supports a finding that plaintiff has mild and moderate limitations due to her mental impairments.

### B.    Plaintiff's Credibility

Plaintiff argues that the ALJ failed to properly weigh her credibility.  The ALJ, as the finder of fact, is ideally suited to assess credibility, and the court will not disturb an ALJ's credibility findings if they are supported by substantial evidence. Wilson v. Astrue, 602 F.3d 1136, 1144 (10th Cir. 2010).  Generally, an ALJ's credibility determinations are treated as binding on review, recognizing that symptoms are sometimes exaggerated when applying for government benefits.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990).

The ALJ discussed plaintiff's credibility as follows:

The claimant's allegations of limitations are credible to the extent that she is reduced to a level of work as outlined herein. However, the claimant's allegations of disabling limitations are not supported by the objective medical evidence and examination findings as noted above. Medical records indicate that the claimant does have a history of complaint of anxiety and difficulty leaving her home. However, treatment notes from Via Christi Psychiatric Clinic dated March 5, 2010 reveal that while the claimant reported continued high anxiety levels, she also indicated that she is able to take her son to and from school and to go out on various occasions (Exhibit 1F/5). Follow-up notes dated October 28, 2010 show that while the claimant reported that her motivation was good as far as taking care of her child, she stated her motivation to find a job was low. Despite her allegations of difficulty interacting with others, the claimant reported that she was able to go to her mother's house approximately three times a week to assist her mother and her 58-year old disabled sister. The

claimant further indicated that she went out to buy groceries two times a week and went out with a friend to socialize approximately once a week (Exhibit SF/4). Overall, even though treatment notes show that the claimant had symptoms of depression and anxiety, these notes also indicate that the claimant did not report significant problems and that she did relatively well when she was compliant with her medication regimen.

In evaluating persuasiveness of testimony, the undersigned notes that there are inconsistencies between the claimant's allegations and the medical evidence of record. The claimant reported on a Function Report near the time of filing that she is unable to go anywhere without a "severe panic attack" (Exhibit 4E/6). However, progress notes dated April 23, 2010 indicated that the claimant denied any recent panic attacks and stated that she is able to take her son to school and interact with him on a very good front (Exhibit 1F/2). In fact, during a January 28, 2011 followup appointment, the claimant reported that she had not experienced a panic attack in a year, and that she felt good as far as her symptoms of anxiety and depression were concerned (Exhibit 8F/3).

Furthermore, mental status examinations were generally within normal limits.

* * *

The claimant's daily activities are consistent with the above residual functional capacity assessment but are inconsistent with the disability allegations. While the claimant ultimately alleged that she is unable to work due to symptoms of depression and anxiety, these contentions are not supported by her daily activities that showed, near the time of filing, that she was able to (1) care for her son; (2) manage personal care; (3) prepare simple meals daily; (4) complete household tasks such as cleaning, laundry, ironing, and mowing the yard; (5) drive a motor vehicle; (6) grocery shop at "safe" grocery stores; (7) count change and use a checkbook/money orders; and (8) spend time visiting with her mother and her friend "J" (Exhibit 4E). In fact, the claimant reported during a psychological evaluation in August 2012 that she keeps to a schedule to assist with her mother and her sister's care; she cooks dinner for the family; and leaves the house nearly every week to get groceries and take herself or her family to the doctor (Exhibit 9F/7). This level of activity is also consistent with the residual functional capacity established herein.

Moreover, the claimant's work history does not support the credibility of the claimant's assertion that she cannot

-9-

> work. In accordance with 20 CFR 416.929, the undersigned is required to consider the claimant's work history in assessing her credibility. A review of the claimant's earnings record indicates a poor work history, which raises some questions as to whether the current unemployment is actually the result of medical problems or rather a choice not to work. As a result, the undersigned finds that the claimant's work history does not lend great support to the credibility of the claimant's statements about the inability to work full-time due to her alleged impairments.

(R. at 29-30).

Plaintiff contends that the ALJ's credibility determination was improperly evaluated due to a "credibility factor of cleanliness and the ability to dress appropriately." (Doc. 14 at 54). The discussion concerning plaintiff's dress did not occur in the context of the ALJ's credibility determination. Rather, it was discussed in determining plaintiff's limitations. Therefore, plaintiff has not established that the ALJ "improperly assessed credibility by inappropriate means." (Doc. 14 at 58). Rather, the ALJ adequately and extensively explained his decision that plaintiff's testimony was not entirely credible. The ALJ cited to the relevant portions of the medical records which supported his decision. Plaintiff does not contradict the medical evidence cited by the ALJ.

Therefore, the ALJ's finding is supported by substantial evidence. Wilson, 602 F.3d at 1144.

### C.   Step 3 Determination

Finally, plaintiff contends that the ALJ erred at Step 3 in determining that plaintiff's impairments did not meet the B criteria of listings 12.06, 12.04 and 12.08. See 20 C.F.R. § 404, Subpart P, Appendix I.  In order to meet the B criteria of the listings, plaintiff must have at least two of the following: 1) Marked

-10-

restriction of activities of daily living; or 2) Marked difficulties in maintaining social functioning; or 3) Marked difficulties in maintaining concentration, persistence, or pace; or 4) Repeated episodes of decompensation, each of extended duration. See 20 C.F.R. pt. 404, subpt. P, app'x 1 § 12.04B, 12.06B, 12.08B.

At this stage, the ALJ must determine that the medical findings are at least equal in severity and duration as those in the listed findings. 20 C.F.R. § 404.1526(a). "Medical findings include symptoms (the claimant's own description of his impairments), signs (observations of anatomical, physiological and psychological abnormalities which are shown by clinical diagnostic techniques) and laboratory findings. 20 C.F.R. § 404.1528 (1986). However, the claimant's descriptions, alone, are not enough to establish a physical or mental impairment. Id. at § 404.1528(a)." Bernal v. Bowen, 851 F.2d 297, 300 (10th Cir. 1988).

The ALJ thoroughly discussed all of the medical evidence in the record. The ALJ also discussed the severity of plaintiff's symptoms and adequately explained why he did not find plaintiff's statements of her symptoms to be entirely credible. Both state agency psychologists, Dr. Schulman and Dr. Stern, found that plaintiff did not meet the required criteria of any of the listings. (R. at 358-70, 388). Both doctors also determined that plaintiff's limitations varied from mild to moderate. As discussed above, Dr. Allen only found that plaintiff had mild and moderate limitations.

In criticizing the ALJ's step 3 findings, plaintiff spends more than 10 pages reciting her testimony from the hearing. Plaintiff, however, fails to cite to any evidence from the medical record which

would support her position that her symptoms meet one of the listings. As stated above, plaintiff's own descriptions of her impairments is not sufficient to establish her disability under the Listings.  20 C.F.R. § 404.1528(a).   After reviewing the evidence, no medical opinion lists plaintiff's limitations as marked.   Moreover, the medical records do not support a finding that plaintiff's limitations are marked.

For these reasons, plaintiff failed to provide sufficient evidence supporting her claims, and the court finds that the Commissioner's decision on this point is supported by substantial evidence.

**IV.   Conclusion**

The decision of the Commissioner is affirmed.


IT IS SO ORDERED.

Dated this 2nd   day of September 2015, at Wichita, Kansas.


s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE